Filed 11/24/20  Grant v. Bank of America CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GAVIN LESTER GRANT, | |
| Plaintiff and Appellant, | G058111 |
| v. | (Super. Ct. No. 30-2018-00993609) |
| BANK OF AMERICA, N.A., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Charles Margines, Judge.  Affirmed.

Gavin Lester Grant, in pro. per., for Plaintiff and Appellant.

McGuire Woods, Leslie M. Werlin and Adam F. Summerfield for Defendant and Respondent.

\*          \*          \*

Describing the operative complaint as "garbled, highly repetitive, full of citations to irrelevant laws and doctrines, and overlaid with a layer of 'sovereign citizen' references," the court sustained a demurrer to plaintiff Gavin Lester Grant's complaint arising from an attempted nonjudicial foreclosure of his residence. It sifted through the chaff to discern three causes of action against defendant Bank of America, N.A. (Bank of America): trespass, breach of contract, and fraud. It held none were properly pleaded and dismissed the complaint with prejudice. The court did not err.

The complaint revolves around plaintiff's gimmicky ploy to avoid paying his mortgage. When plaintiff defaulted, he concocted a "Banker's Promissory Note," which, according to plaintiff, extinguished the note and deed of trust on his residence in exchange for an unsecured debt. Obviously, Bank of America would never agree to that, so he slipped in the following term: The note was automatically accepted if Bank of America did not return it within two days of receiving it. Bank of America did not respond. The gist of plaintiff's claim is that all subsequent steps taken to enforce the original note were illegal because it and the deed of trust had been extinguished.

Nonsense. The "Banker's Promissory Note" is obviously an unacceptable tender of the debt plaintiff owed and the complaint does not otherwise allege any wrongful conduct. We affirm the judgment.

ALLEGATIONS

Plaintiff owns a residence in the City of Orange. In November 2007, plaintiff took out a secured loan on the residence, which included an adjustable rate note and deed of trust. Plaintiff defaulted on the loan. In December 2015, Clear Recon Corp. (Clear Recon), the trustee on the deed of trust, recorded a notice of default. In March 2016, Clear Recon recorded a notice of trustee sale. That same day, Clear Recon posted a notice of trustee sale on plaintiff's garage door (which is the basis for the trespass

2

claim).  For reasons that are unclear in the complaint, the foreclosure did not proceed at that time.[1]

Meanwhile, plaintiff came up with a plan.

First, on September 6, 2016, he acquired 10 shares of an entity called "Private Banker National Banking Association," a self-described "Common Law National Banking Association."

A couple of weeks later, apparently empowered by his membership in the alleged private banking association, he drafted a $1.5 million "Banker's Promissory Note" (the Banker's Note).  The role of the "Private Banker National Banking Association" is not clear from our reading of the complaint, except to note that the Banker's Note is payable by "Gavin Lester Grant, Private Banker, I.D. Number: 000870338037," which in turn raises the question whether plaintiff intended the "Private Banker National Banking Association," instead of himself personally, to be obligated on the Banker's Note.  In any event, the note, by its terms, was deemed accepted if not returned within two banking days.  It required plaintiff to pay $10,000 per month on the seventh day of each month.  Except there was a catch:  The holder was required to come to plaintiff's personal residence to pick up the payment.

That same day, plaintiff wrote a letter to the chief financial officer (CFO) of Bank of America, which stated, "Find enclosed negotiable security instrument, full satisfaction of the claimed loan and final settlements to, BANK OF AMERICA, N.A., BEARER or HOLDER as Final payoff, Discharge of debt, CASE NO. 000870338037"[2]

One week later, on September 28, 2016, plaintiff visited a Bank of America branch office in the City of Orange and handed the Banker's Note and correspondence to

---

[1]  Somewhere in this process plaintiff filed for bankruptcy, twice, to prevent the sale of the residence.  The complaint is unclear on the exact timeline.

[2]  The case number referenced in the letter is nearly illegible but appears to be the same number associated with plaintiff in the Banker's Note.

a middle manager (specifically, the "Financial Center Manager" for the branch). The middle manager wrote "received and accepted" on both of the documents.[3]

The due date of the first scheduled payment on the Banker's Note came and went, and, to no one's surprise, Bank of America did not send a representative to plaintiff's residence to pick up the first payment. The following day, plaintiff wrote Bank of America's CFO to inform him that since no one had come to pick up the payment, his debts were discharged.

Bank of America never adjusted his original loan balance to reflect the alleged payment in full by the Banker's Note.

PROCEDURAL POSTURE

Plaintiff filed the present suit in May 2018. The operative second amended complaint asserts causes of action for trespass, breach of contract, and fraud. In a thorough and detailed ruling, the court sustained Bank of America's demurrer without leave to amend. Plaintiff timely appealed from the ensuing dismissal.

---

[3] Plaintiff also alleges that he handed the middle manager a form entitled "UCC Financing Statement." "The purpose of filing a financing statement . . . is to give an existing or prospective creditor the opportunity to inform himself of whether, and of the extent to which, an existing or prospective debtor has encumbered his assets and to govern himself accordingly in dealing with the debtor." (*Borg-Warner Acceptance Corp. v. Bank of Marin* (1973) 36 Cal.App.3d 286, 288-289.) It does not itself create a security interest. Here, the complaint does not allege the existence of a security agreement between plaintiff and Bank of America. (*Needle v. Lasco Industries, Inc.* (1970) 10 Cal.App.3d 1105, 1108 ["a financing statement filed with respect to a security agreement which never comes into existence is a nullity"].) Moreover, the form lists the Banker's Note as the collateral for the obligation it secures. Obviously, the collateral for the Banker's Note cannot be the Banker's Note itself. Thus, even if a security agreement with Bank of America existed, the security is illusory where the collateral is described as the debt it purportedly secures.

4

DISCUSSION


Rather than attempt to respond to each of the assertions in plaintiff's sprawling opening brief, we will confine our analysis to the merits of the causes of action.[4] We review the court's ruling on the demurrer de novo. (*Tamas v. Safeway, Inc.* (2015) 235 Cal.App.4th 294, 298.)

Most of plaintiff's complaint is focused on the supposed discharge of his note and deed of trust by the unsecured Banker's Note. The gist of his claim is that since the original note and deed of trust were extinguished, any attempt to enforce the original note was unlawful.

The Banker's Note, however, is nothing more than an unenforceable attempt at a scam. Why would a bank swap a secured note for an unsecured note from a debtor who was already in default? Answer: It would not. The whole point of the security is to mitigate the default. Plaintiff seems to have realized that. So rather than overcome the insurmountable obstacle of reaching an actual meeting of the minds, plaintiff concocted various ploys to try to defraud the bank of its security interest, such as a requirement that Bank of America return the Banker's Note within two days or be deemed to have accepted it. But that contractual term suffers a fatal flaw: It is only enforceable if accepted. And "[s]ilence in the face of an offer is *not* an acceptance, unless there is a relationship between the parties or a previous course of dealing pursuant to which silence would be understood as acceptance. [Citations.] No such relationship or

---

[4] Plaintiff's brief lists 11 issues on appeal, most of which are totally irrelevant to his claims. For example, issue seven: "Did the Trial Court practice law from the bench?" Indeed, much of plaintiff's brief is consumed with allegations of ethical and procedural improprieties by the trial judge. In light of our de novo review of the merits, however, none of those alleged improprieties are prejudicial since, as we conclude below, his complaint does not state a claim.

course of dealing is alleged." (*Southern Cal. Acoustics Co. v. C. V. Holder, Inc.* (1969) 71 Cal.2d 719, 722, italics added.) Thus, the Banker's Note was never accepted.

This is true notwithstanding the allegation that a middle manager at a branch office signed the Banker's Note as "received and accepted by." We do not interpret that language as an acceptance of the terms of a contract. And even if we did, there is no allegation in the complaint that the middle manager had authority to modify the note and deed of trust on behalf of Bank of America. (See *Snukal v. Flightways Manufactoring, Inc.* (2000) 23 Cal.4th 754, 779 (["the party seeking to enforce a contract with a corporation generally has the burden of establishing the contracting officer's authority to bind the corporation"].)[5] It is common knowledge that large banks have an entire unit of the company dedicated to mortgages, and a lengthy review process for any mortgage modifications. The middle manager is described in the complaint as the "Financial Center Manager" of a branch office—a title that does not suggest any authority over home loan modifications.

Finally, even if the Banker's Note had been accepted in the contractual sense, it says nothing about a deed of trust. It is simply an unfettered obligation of plaintiff to pay Bank of America $1.5 million. The only tie-in of the Banker's Note to the deed of trust is the letter plaintiff wrote to Bank of America's CFO claiming to tender the Banker's Note in discharge of the mortgage. But the CFO never responded to that letter.

Plaintiff claims Bank of America has waived the right to object to plaintiff's tender of the Banker's Note, citing Code of Civil Procedure section 2076,

---

[5]    This common law rule has been modified by Corporations Code section 313 which provides a conclusive presumption of corporate authority "when [the contract is] signed by the chairperson of the board, the president or any vice president and the secretary, any assistant secretary, the chief financial officer or any assistant treasurer of such corporation." Since the middle manager was not one of the listed officers of Bank of America, the common law rule applies.

6

which provides, "The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it; and if the objection be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterwards."  However, the purpose of that section is simply "to allow a debtor who is willing and able to pay his debt to know what his creditor demands, so that the debtor may, if he wishes, make a conforming tender."  (*Sanguansak v. Myers* (1986) 178 Cal.App.3d 110, 115.)  The cases applying Code of Civil Procedure section 2076 generally rely on estoppel and "arise either where a creditor has refused a tender without specifying his reasons for the refusal or where he has accepted a tender without informing the debtor that the tender is nonconforming." (*Sanguansak*, at p. 115.)

We find no basis for an estoppel here.  The Banker's Note was *not* a good faith tender of payment under the original loan.  It was a gimmick.  Plaintiff knew exactly what to tender under the original loan:  the amount of his default in a traditional payment form.  Nothing about Bank of America's conduct gave rise to an estoppel and thus Code of Civil Procedure section 2076 does not aid plaintiff.

Accordingly, to the extent plaintiff's claims for breach of contract, trespass, and fraud rely on the Banker's Note discharging the original note and deed of trust, they fail to state a cause of action.  Plaintiff alleged that Bank of America breached a contract by failing to reduce his original loan balance to zero.  Plaintiff alleged that Bank of America committed fraud by representing that Clear Recon had authority under the deed of trust to exercise the power of sale.  And he alleged that Clear Recon committed trespass (in conspiracy with Bank of America) by entering his property to post a notice of

trustee sale on his garage without legal justification since the deed of trust was void. All of those claims depend on the Banker's Note and thus fail. [6]

Aside from the Banker's Note, the complaint includes a blunderbuss of generic allegations about Bank of America's failure to disclose the securitization of the mortgage (which occurred after the mortgage was created), Bank of America's failure to respond to various document requests by plaintiff, and allegedly inconsistent statements about who legally owned the loan (as opposed to the servicer). None of those allegations, however, amount to a breach of contract or fraud, nor does plaintiff allege any cognizable damages from them, much less any basis for rendering the original note and deed of trust void. Accordingly, the court correctly sustained the demurrer. Plaintiff has not suggested any way he could amend the complaint to state a cause of action, and thus the court acted within its discretion in denying leave to amend.

DISPOSITION

The judgment is affirmed. Bank of America shall recover its costs incurred on appeal.

IKOLA, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

GOETHALS, J.

---

[6] Another reason the trespass claim fails is because Clear Recon posted the notice of trustee's sale on plaintiff's garage months before plaintiff implemented his Banker's Note scheme. Thus, even by plaintiff's flawed reasoning, the entry on his property occurred well before the loan was discharged.